Our final case this morning is Armijo v. Affilion number 20-2086. Mr. Filer, you may proceed. May it please the court. My name is Ben Filer and I, along with my law firm, McGehee, Chang, Langriff, and Filer, represent the plaintiffs in this case, Benjamin Armijo and Ophelia Aranquillo, as well as all other similarly situated persons. The district court incorrectly dismissed plaintiff's complaint on defendant's 12b6 motion. This court should reverse the district court's ruling, render that plaintiff's claims are valid under New Mexico law, and remand this case to the trial court for further proceedings because plaintiff's adequately alleged claims for negligence, breach of implied contract, and unconscionability under New Mexico law. Where do you allege a duty owed to the plaintiff by this defendant? The duty is alleged in our complaint in the negligence section, and the duty arises not only out of the relationship between the defendant and the plaintiffs. The defendants are the nation's largest health emergency medical care provider in the country. They provide their physicians, their employed physicians, as alleged by plaintiffs, provide care at at least seven locations in the state of New Mexico. And just so it's clear, we also allege that the envisioned defendants control the physicians, the billing, and the revenues and profits from the top down. Why did you sue the doctors? We didn't sue the doctors because the doctors aren't the ones who control the billing. They're the ones who do the service and tell them how much to bill. They are the ones who provide the care on behalf of defendants as defendants' employees. And then the defendants choose and set the rate at which the bill is sent to the plaintiffs, the emergency medical care patients. And they do this through their corporate structure, through contracts, stock ownership, and other similar arrangements between themselves, and also the local physician entities like Affilion, LLC, who contract with the hospitals. And that's on pages 13 through 17. Well, assuming your client paid the bill, would Mountain View Regional Medical Center get any of it? No, Your Honor. The envisioned defendants retain the rights to the billing of the physicians for the care that those physicians provide. And this is, as an example, Envision Health Care, who's at the top of the ladder, says it's not a health care provider, but in the third quarter of 2017, its net revenue from, quote, physician services was $1.67 billion. How can they put the physician in the hospital, bill for the physician services, receive the revenues and profits, and then try to divorce themselves from the issue? So what about the duty? You still haven't told me where the duty is. The duty arises under New Mexico law, Your Honor. So like, just magic? No, Your Honor. As recognized by Rodriguez v. Del Sol Shopping Center Associates, LP, the New Mexico Supreme Court has adopted section seven of the restatement third of torts as it relates to duty and negligence claims. And in section seven, the restatement specifically says that the general rule is that an actor owes a duty to a plaintiff if there is a potential risk of harm. There's a potential risk of harm when the harm suffered is worse than it would have been otherwise. And that's the general rule. And in order to, section seven B states that in order to find no duty, the district court has to specifically articulate policy reasons as to why the general rule should be changed. And in this case, the district court did not articulate a single policy reason why emergency medical care patients who are vulnerable, captive, and in a diminished capacity at the time that they're provided care shouldn't be protected from overbilling. But isn't that really your claim? This is an overbilling claim, correct? Yes, Your Honor. All right. So I'm back to the duty question. Where does New Mexico law recognize a duty of reasonable care owed by a medical biller to a recipient of medical services? So the New Mexico law recognizes that an actor has a general duty of care. And that is where the duty arises. An actor has a general duty of care. That's pretty general. Have you got anything a little more specific than that by way of authority that a medical biller owes a tort duty of reasonable care? Your Honor, the closest authority that I have is Rodriguez v. Del Sol Shopping Center Associates which adopted the Ferber Statement of Tort Section 7. But to answer your question more specifically... What were the facts in that case? Do they match up to anything we have here? No, Your Honor, they don't. But the law applies. And to answer your question a little bit more specifically, as it relates to the duty, these plaintiffs allege that defendants aren't just a medical billing company. We allege that they are essentially vicariously liable by way of employing the physicians to provide the care. This is a single transaction. The patient comes in seeking emergency medical care. There's no negotiations regarding fees, no documents exchanged regarding fees. The patient is provided medical care by one of defendant's physicians and then sent an overpriced bill after the fact. So who said it's overpriced? We allege it's overpriced in our complaint, Your Honor. Yeah, I know you do. But what's it based on? It's overpriced based on the fact that the rate that they price ignores industry standards, market data, rates paid by major insurance companies and federal governments. That's alleged on page 12 of our pleadings. But do you allege what a reasonable bill for these services would have been? We do, actually. When we define the class of persons that this case seeks to represent, we state that the class should be limited at this point in time to patients who were billed more than the highest inpatient rate that is applicable to those services. And the reason why that's enough at this stage of the litigation is because requiring the plaintiffs to allege a more specific price essentially amounts to a denial of due process. There's been no discovery and defendants are the ones who have all of this information. As this court recognized in Loeffler versus United Healthcare of Utah Incorporated, the information relating to payor rates, the amounts that defendants charge on an industry-wide basis to patients and things of those nature are highly confidential. They're not available to the public. And if we were able to get these numbers from defendants, the calculation of the damages is very simple. The facts of this case are very simple. The plaintiffs are part of a population that is vulnerable, captive in a diminished capacity at the time they're provided care. They aren't able to negotiate because of that. And New Mexico law recognizes in other situations that emergency medical care patients shouldn't have to inquire regarding a physician's employer, for example, at the time they're seeking emergency medical care. That same reasoning applies here. And they also have no leverage after the fact to negotiate because defendants are the ones in possession of all the information that they could use to negotiate. Well, they didn't have to pay. New Mexico has an indigent defense fund to cover just that exact situation. Well, defendants seek payment from... Is that correct? I'm unaware, Your Honor. Okay. There is. Okay. But defendants still seek payment from these plaintiffs. And that's also why it amounts to a breach of contract, breach of implied contract under New Mexico law. And that brings me to the breach of contract claim. Here, the district court ruled on page 138 of the record that there was no implied contract. But there has to be a contract. That's what gives rise to the obligation to pay the bill. Contracts go both ways, too. To the extent there's no contract, there's no obligation to pay the bill, and the defendants would never be paid for their services. And moreover, the facts as it relates to implied contract law under New Mexico align with the illustration one of section five of the restatement, which the New Mexico Supreme Court specifically adopted in state versus fireman's fund indemnity code, and then subsequently again reiterated in hydro conduit court versus Kimball. And illustration one is a mirror image of this case. It says that A calls grocer, says send me a barrel of flour, grocer... Totally unlike this case. Totally. I respectfully disagree, Your Honor. These patients seek medical care. They go to the grocer and ask for a barrel of flour. The care is provided. The barrel of flour is sent. The illustration says, therefore, you've contracted to pay a reasonable price, therefore. And that's how I... That's our position, is that the reasonable price for the services was the meeting of the minds, because the law of the state is essentially imputed into the implied contract. And the New Mexico Court of Appeals has also recognized that where a contract is silent as to price, specifically including implied contracts, a reasonable price term will be inferred. And that was in Beaver versus Rumlow, as well as Padilla versus RRA Incorporated. So moving on to... Brazelton versus Nicholas and Mars, which is a Texas appellate case and deals with attorneys and the Texas rules of civil procedure and the Texas Code of Professional Responsibility. Your Honor, you're referring to our negligence claims. And I was talking about our breach of an implied contract claim. But to address that issue, I merely cited that as a proposition as to why public policy favors imposing a duty here. These are professional corporations that provide care to emergency medical care patients. And that's what we alleged. The provision of care is part of the transaction. It's not separate. It's all one transaction. But the conduct at issue here is the defendant's sending of the unilaterally determined medical bills to the patients that are far above the usual and customary rate for said services. And so that's what the issue is in this case, despite the fact that it's one transaction for each patient. And so that's why it's also improper. And the damage is also at issue here. The damage here, regardless of whether payment has occurred, is the delta of the debt. And what I mean by that is it's the portion of the debt that's in excess of the usual and customary rate that should have been charged. And at least three courts that I could find, including the Southern District of Texas and the Second Circuit, have stated that a debt in and of itself is enough to state an injury. This also lines up with the statute of limitations law in New Mexico as it contract claims that the New Mexico Supreme Court cited in Welty v. Western Bank of Las Cruces that says the claim begins to run at the moment of the breach. And I see- Also, counsel, could I just, before we run out of time, on your unconscionability arguments, isn't unconscionability an affirmative defense to a contract enforcement claim and not itself a cause of action? To the extent there's a contract and there's no breach, the contract itself is unconscionable. The terms are substantively unconscionable because they require payment above the usual and customary rate, and the circumstances of the transaction are unconscionable. Well, I'm just asking, is it a standalone claim or not? We believe it is. Do you have any authority for that? Sitting here right now, no, I do not, but I would happily provide the court with some briefing on that issue should they request it. And for these reasons, we respectfully request this court reverse the District Court of Appeals, render a judgment in favor of plaintiffs, and remand for further proceedings. Thank you, counsel. Mr. Jacobs? Thank you. May it please the court, I am appearing on behalf of the Appellees. We would ask this court to affirm the dismissal of the complaint. I think this complaint is probably the poster child for a complaint that is insufficient as a matter of law. But let's talk about what's really an issue here, and this goes to all of the alleged causes of action in the complaint. This case and other similar cases brought throughout the country arise really out of the anomalies of the American system of providing health care. A court could not possibly determine what a reasonable charge for emergency services would be without wading into the entire structure of providing hospital care and the means of having insufficient medical providers to staff emergency departments on their own, and the need to contract out for those services. These are the subjects of which state and federal executives, legislatures, and regulatory bodies have been wrestling and are governed by numerous legislative acts and regulatory bodies, and hence the No Surprises Act of 2020. Plaintiffs are asking this court quite simply to solve the problems of the American health system through litigation. The district court declined to legislate. We would ask this court to do the same, but specifically to the complaint in issue in this case, which is the only thing in a plausible cause of action. Plausibility must refer to the scope of the allegations in the complaint. In this case, they are so general that they encompass a wide swath of conduct, much of it innocent, and therefore the plaintiffs have not nudged their claims across the line from conceivable to plausible. Look at the class definition. The class definition is all individuals who were sent medical bills by defendants, including but not limited to defendants and any of defendants' affiliates, within the past six years for amounts that exceed the highest in-network amount paid by a major private health insurance plan for such services. That, I mean, let's talk about how that works in real life. That changes daily, changes monthly, changes all the time. And the way this class is defined, if our clients charged a dollar more than that, then under their theory, they would have a cause of action for negligence and breach of contract. We submit that that is absurd. Let's talk about the negligence claim. They've cited no case, and can cite no case, that says there is a duty of physician not to bill for a certain amount. Yes, for medical services, absolutely, there is a duty. The billing is not a medical service. They've cited no case. There's nothing in New Mexico under New Mexico law that establishes such a duty, and we submit this court should not in effect legislate and create such a duty, which is what we believe would be happening, were their negligence claim to be sustained. They also haven't alleged any damage in the negligence context. The only damage they allege is receiving a bill. That is not a tort damage. Well, don't they allege that their credit ratings were adversely affected? Even if that were the case, your honor, that would not be a tort damage. Well, if they didn't allege any damage in the negligence context, why would they have standing to bring a negligence claim? They don't. They don't. They do allege further on in their complaint, although they don't incorporate it by reference some elements of damage, but in the negligence context, they don't, and they don't have anything to say. As a matter of fact, turning to the implied-in-fact contract, and I want to make this very, very clear, they have only pleaded an implied-in-fact contract. They've done it insufficiently, but there's no other implied contract which has been pleaded. And how do we know that? Well, we know that from the complaint itself. This is actually the first amendment complaint, where they talk about a meeting of the minds, and they talk about it repeatedly within their complaint on the contract claim, that there was a meeting of the minds between the defendants and the plaintiffs to only charge usual and customary rates. Well, we can only have a meeting of the minds in an implied-in-fact contract. Now, they contradict themselves in their briefing by talking about, and Mr. Filer, you're here today, by talking about- No, you have faded out. I'm sorry. Your Honor, can you not hear me? You're okay now. Okay. Sorry. I was there with the meeting of the minds. Their pleadings, not their pleadings, I'm sorry, their briefing, and Mr. Filer made reference to it again today, that the patients come in under diminished capacity. Well, we have to stay with the pleading that the district court had, not some imaginary pleading that the plaintiffs now want to file or think they have filed. In the pleading before the district court, there was a meeting of the minds. And if that's the case, as I said, that's an implied-in-fact contract, they have not stated the elements of an implied-in-fact contract. There's no discussion of what representations were under implied-in-fact contract. And we cited the Galarza case, which talks about an implied contract arises from the representation of the parties. It depends on whether the representations create a reasonable expectation of contractual rights. And there isn't a single allegation of what those representations are. The complaint is complete, the First Amendment complaint is completely devoid of any such allegations. Therefore, they have not stated an implied-in-fact contract. And moreover, if that weren't enough, the nail in the coffin here is this is governed by MTALA. I'm sorry, developed by who? MTALA. And let me, if I may, Your Honor. That is the federal statute that governs emergency medical care. It's cited in our papers, cited in our brief. Under MTALA, when someone presents to the emergency department, they must be treated. They cannot be asked about insurance. They cannot be asked anything. They present, they are treated, period. Therefore, under MTALA, as well as New Mexico statutes, health and safety, section 24-1-5.8, which says basically the same thing, there cannot be an implied-in-fact contract because there's a pre-existing duty. The doctors must treat the patient. If there's a pre-existing duty, the doctors are not giving up a right, a contract. You have to give up a right and get a right. They're mutual promises. There are no mutual promises here. The doctors don't have a choice. They must treat. Therefore, even if there were representations about what the contract was and there aren't, both New Mexico law and MTALA, because there's a pre-existing duty, mean there can be no contract. This is James v. Strongthorne, 124 New Mexico, 613. Under the pre-existing duty rule, where a party does or promises to do what he is legally obligated to do, he has not incurred a detriment, and there's inadequate consideration to form a bond. Just putting the legal nicety on it, but there cannot be a contract. Well, counsel, let me just ask you, if the plaintiffs were, in fact, overbilled, what recourse do they have? Well, this is all outside the record, Your Honor, but I mean, the recourse is, if they receive a bill and they don't like that bill, there is a system in place, a number they call to raise issues with that bill and ask that if it was, if this is an instance where there is a carrier involved, that whatever the carrier paid take care of the bill, and usually that takes care of the issue. So this is a bit of a tempest in the teapot. Now, if they owe, and again, this is outside the record, but I'll just explain the procedure, if they owe a copay or a deductible or there's coinsurance, those payments have to be made, or our client has no ability to waive those. It's what, I'm sorry, you move over, your voice tails off. I'm sorry, I'm sorry, Your Honor, but what I was saying is, I'll get closer to the microphone here, what I was saying is that there's this procedure that they can call and discuss their bill, and if they want it, it's covered by insurance, do I have to pay any more? And nine times out of 10, the answer is no. However, if there's a copay or a deductible or coinsurance, our client cannot waive those by law, those must be paid. And that's how it works in the real world. Now, what if there's no insurance and the patient says, well, I think $2,000 is too darn high, what happens then? Negotiate. Negotiate? Yes. I mean, we can't, EMTALA prevents any kind of negotiation before, while they're wheeled into the emergency department, can't do it. It's illegal, but you can certainly do it after the fact, and it's done after the fact, all the time. There's a whole system in place to do that. As to unconscionability, Judge Matheson, you were quite right, those are defenses, they are not affirmative claims, and therefore, they cannot be brought. So, just recapping, the unconscionability claims go by the way, because they cannot be affirmative claims, the implied-in-fact, alleged implied-in-fact contract goes away, because it's insufficiently pled, and if it were, there's a pre-existing duty, and on the negligence claim, there's no duty with respect to billing, whether you're a doctor or not. One case, I think Judge Kelly, that you made reference to, that was with respect to attorneys, it was a Texas case, and that's because there's a particular statute on the books with respect to attorneys in Texas. And so, there's no case they've cited in that regard, and in that case, that claim goes away. So, Judge Gonzalez was quite correct in dismissing this complaint, and he was quite correct in dismissing it with prejudice. Mr. Filer had the opportunity to amend, certainly after the motion was made. He did not comply with the rules in terms of trying to amend. We know that there was like a line in his papers before the district court that, you know, reserving a right to amend, that's insufficient under Rule 15. It's insufficient under Rule 11. It's insufficient under local rule of the District of New Mexico, 15.1. And as noted in the cases we cited, both, well, it's in our papers, and including Glenn v. National Bank, there is a way to do this the right way, if they wanted to amend, and that's make a motion under Rule 59 or Rule 60, but they didn't do that either. They went straight to appeal. So, we believe that the court, Judge Gonzalez was correct in dismissing this complaint with prejudice, and we would ask the court to affirm. Thank you, counsel. Thank you both for your arguments this morning. The case will be submitted. Counsel are excused.